CHARLOTTESVILLE MUSIC CENTER, INC., a Virginia Corporation, d/b/a The Sound Shop, Appellant,

v.

MAGNEPAN, INC., a foreign corporation, Appellee.

CHARLOTTESVILLE MUSIC CENTER, INCORPORATED, a Virginia Corporation, d/b/a The Sound Shop, Appellee,

v.

MAGNEPAN, INCORPORATED, a foreign corporation, Appellant.

Nos. 80–1838, 81–1032.

United States Court of Appeals, Fourth Circuit.

Argued June 2, 1981.

Decided July 21, 1981.

Arthur M. Lieberman, New York City (Lieberman & Nowak, C. Michael Montgomery, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for appellant/cross-appellee.

William F. Young, Richmond, Va. (Thomas G. Slater, Jr., Hunton & Williams, Richmond, Va., on brief), for appellee/cross-appellant.

Before WIDENER, HALL and ERVIN, Circuit Judges.

K. K. HALL, Circuit Judge:

Charlottesville Music Center, Inc. (Music Center) appeals from a jury verdict in favor of Magnepan, Inc. (Magnepan) on the ground that the trial court abused its discretion in limiting discovery. Magnepan cross appeals from the district court's judgment n. o. v. setting aside a jury award of $4,756 on its counterclaim. Finding no error in the trial, we affirm.

Music Center is a stereo retailer with stores in Charlottesville and Norfolk, Virginia. Magnepan manufactures an exclusive, patented stereo loudspeaker.[1] In 1974 both of the Music Center stores obtained Magnepan dealerships. After three years, however, Magnepan terminated the Charlottesville dealership for failure to provide adequate display facilities. The Norfolk store continued to be a Magnepan dealer, but in contravention of the terms of its dealership contract, began transshipping Magnepan speakers to the Charlottesville store. Magnepan terminated the Norfolk dealership a year later, ostensibly because of these transshipments.

█ Music Center filed suit in district court, claiming Magnepan violated federal anti-trust laws by terminating its dealership because it sold loudspeakers at prices below the suggested retail price.[2] Magnepan denied that allegation and filed a counterclaim asserting that subsequent to the termination of the Norfolk dealership, Music Center commercially disparaged its product, thereby causing another Magnepan dealer in nearby Virginia Beach to suffer a loss of business.[3]

During discovery, the Music Center served 50 requests for Magnepan documents pertaining to its commercial relationships with other dealers. The requests were not limited in geographic area or time frame and explored a number of diverse subjects including all previous dealer terminations, dealer credit information, and patent matters. When Magnepan objected to 32 of the requests, the district court conducted a hearing and limited these requests to those documents which were relevant in time, geographic area, and subject matter. These documents were produced by Magnepan.

At trial a witness for the defendant testified that he visited the Norfolk store while

---

1. The Magnepan loudspeaker is six feet high, but only one inch thick. Because of this unique design, Magnepan requires its dealers to hire experienced audio salespeople and to meet rather strict display and service requirements. Additionally, the Magnepan warranty card requires more than the usual information from the customer, including the price actually paid for the speakers.

2. Music Center alleged that Magnepan examined the price information on the warranty cards and terminated dealers who sold the product for less than retail price. Such practices violate the Sherman Anti-Trust Act prohibitions against price fixing, 15 U.S.C. § 1.

*White Motor Co. v. United States*, 372 U.S. 253, 260, 83 S.Ct. 696, 700, 9 L.Ed.2d 738 (1963).

3. A statement is disparaging if it casts doubt upon the quality of another's chattels and was intended to cast such doubt or was reasonably understood to cast such doubt by the recipient. Restatement (Second) of Torts, § 629; *Systems Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1134 (3d Cir. 1977).

While the parties implicitly recognize that Virginia law determines the substantive aspects of product disparagement, there is no authority in Virginia concerning product disparagement as such.

shopping for stereo equipment and was told by the store employees that Magnepan speakers were of poor quality and were constantly in need of repair. He also testified that the Magnepan speakers in the Music Center showroom were in fact defective and were not positioned properly for good sound reproduction. A Music Center employee called by Magnepan verified this testimony, and went on to say he "often" switched customers to other lines of speakers after his store lost its Magnepan dealership. Finally, Magnepan's president testified that the outlet in Virginia Beach suffered a significant decline in Magnepan business after the Norfolk Music Center store lost its contract with his company.

The jury found for Magnepan on the price fixing claim and awarded it $4,756 in damages on its product disparagement counterclaim. However, the district court then entered judgment n. o. v. for Music Center on the commercial disparagement counterclaim, finding that Magnepan failed to establish a causal connection between the plaintiff's actions and the loss of sales at defendant's Virginia Beach store.

On appeal, we examine the questions of whether the trial court improperly limited discovery and whether the court erred in entering judgment n. o. v. in favor of Music Center on the counterclaim.

■ Appellant argues that the trial judge abused his discretion in restricting plaintiff's discovery. Of the 50 requests for documents, several were phrased very generally and were, in some instances, overlapping.[4] The district court ordered Magnepan

to provide a nationwide list of dealers terminated for non-credit reasons and to produce complete files and warranty cards for dealers terminated in the five-state area surrounding the plaintiff.[5] Given the discretion normally accorded trial judges in determining the scope of discovery, we find the actions of the district court in policing these broad requests to be well within its discretion. *Universal Lite Distributors v. Northwest Industries, Inc.*, 602 F.2d 1173 (4th Cir. 1979).

Cross-appellant Magnepan contends that the district court erred in entering judgment n. o. v. for the plaintiff on the counterclaim of commercial disparagement. Magnepan argues that it established a sufficient causal nexus between Music Center's disparaging activities and the loss of business at its Virginia Beach outlet. It further asserts that the jury obviously took into account the various outside causal factors and adjusted its verdict accordingly since the award was less than half of what was requested.

■ The record adequately demonstrates that Music Center employees disparaged Magnepan products. However, Magnepan did not offer sufficient proof that the business decline of its Virginia Beach retailer was caused by the tortious misconduct. The only evidence introduced on causation was the testimony of the defendant's president that after the Norfolk Music Center store was terminated the commercial disparagement began, and the Virginia Beach dealer experienced a sales decrease.[6] This

---

**4.** The broad and overlapping nature of the plaintiff's requests is best illustrated by examining two of the 50 individual submissions:

Plaintiff's Request # 2: All documents embodying, referring or relating in any way to the termination of any dealer of defendant for any reason.

Plaintiff's Request # 4: All documents embodying, referring or relating in any way to the termination of any of defendant's dealers for improper display or demonstration, or lack of proper facilities with regard to defendant's speakers.

Patently, request # 2 includes all of the materials found in request # 4. Of the 50 requests, only 10 were limited by the district court, and

of these a number of them overlapped as illustrated above.

**5.** The court limited full disclosure to an area which included Virginia, West Virginia, North Carolina, Maryland, and the District of Columbia. The court also limited discovery requests to non-patent information.

**6.** Magnepan argues that the testimony of a possible customer and two Music Center employees supports its claim for damages. We disagree; their testimony about the disparaging practices at Music Center did not include a word about lack of sales in the Virginia Beach store. We find it more significant that the

testimony was undermined by the unrebutted evidence that a number of factors directly contributed to the sales decline, including a general decline in Magnepan sales nationwide, financial difficulties at the Virginia Beach facility, and competition from another Magnepan dealer in the Tidewater area. Therefore, Magnepan failed to establish a sufficient direct causal connection between the decrease in sales and the product disparagement. *See Continental Nut Co. v. Robert L. Berner Co.*, 393 F.2d 283 (7th Cir. 1968).

Under these circumstances, the district court was correct in ruling that Magnepan failed to prove that the product disparagement caused a decline in sales at another outlet. Accordingly, we affirm.

*AFFIRMED.*

president of the Virginia Beach dealer ostensibly hurt by the product disparagement testified

to other matters at the trial but never mentioned damages.